**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS W. SPAUDE, *et al*., | ) | CASE NO. 1:16-cv-01836 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| PAUL MYSYK, *et al*., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |

## I.   Procedural Background

On July 20, 2016, Plaintiffs Thomas W. Spaude, Angela M. Spaude, and Dennis C.

Macieski[1] (hereinafter "Plaintiffs"), individually and behalf of all others similarly situated, filed

a Complaint naming the following parties as Defendants: Paul Mysyk; Harrison Schumacher;

Quantum Energy, LLC; Quaneco, LLC; Phillips Murrah, P.C.; Robert O'Bannon; Beverly

Vilardofsky; and, Thomas Wolfe (hereinafter "Defendants").[2] (R. 1). Plaintiffs allege the

---

[1]  The Spaude Plaintiffs are suing individually and as co-trustees of the Thomas W. Spaude and
Angela M. Spaude trust dated July 9, 2003, while Plaintiff Macieski is also suing individually
and as trustee of the Macieski CRNA PC 401(k). (R. 1)

[2]  Plaintiffs voluntarily dismissed their claims against Defendants Phillips Murrah P.C., and

following causes of action: (1) violation of California Corporations Code § 25504.1 against Defendants O'Bannon and Vilardofsky; (2) violations of Ohio Blue Sky Law, O.R.C. § 1707.43 against Defendants O'Bannon and Vilardofsky; (3) legal malpractice/negligence against Defendants O'Bannon and Vilardofsky; (4) negligent misrepresentations and/or omissions against Defendants O'Bannon and Vilardofsky; (5) aiding and abetting fraud under Oklahoma common law against Defendants O'Bannon and Vilardofsky; (6) breach of fiduciary duty under the common law against Defendants Quantum Energy, LLC, Quaneco, LLC, and Schumacher; and, (7) aiding and abetting breach of fiduciary duty under the common law against Defendants O'Bannon and Vilardofsky. *Id.* Generally, Plaintiffs allege that they are investors in a fraudulent scheme maintained by Defendants Quantum Energy, LLC, Quaneco, LLC, and Schumacher (the "Quantum Defendants")[3] in conjunction with the Quantum Defendants' attorneys—Defendants O'Bannon and Vilardofsky from the law firm of Phillips Murrach in Oklahoma City. *Id.* Plaintiffs further allege that Defendants Vilardofsky and O'Bannon drafted the offering documents for Quantum Defendants containing fraudulent and material misrepresentations, without which their securities would not have been marketable. (R. 1, PageID# 7-8).

On September 16, 2016, Defendants O'Bannon and Vilardofsky filed a Motion to Dismiss

---

Thomas Wolfe without prejudice on September 16, 2016. (R. 7 & 8). Similarly, claims against Defendant Paul Mysyk were dismissed without prejudice on October 13, 2016. (R. 15). On June 19, 2017, Plaintiffs applied to the Clerk of Court for default judgment against Defendants Quantum Energy, LLC, Quaneco, LLC, and Harrison Schumacher. (R. 37, 38 & 39). On July 7, 2017, the Clerk of Court entered default against these Defendants pursuant to Fed. R. Civ. P. 55(a). (R. 43, 44 & 45).

[3] Plaintiffs allege that Quantum Energy, LLC and Quaneco, LLC were run as a single enterprise. (R. 1, PageID# 5).

all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] (R. 9). On

October 18, 2016, Plaintiffs filed their opposition to the motion to dismiss. (R. 17). Defendants

O'Bannon and Vilardofsky filed a reply in support of their motion on November 1, 2016. (R.

20).

On May 10, 2017, this matter was referred to the undersigned magistrate judge for a report

and recommendation on the pending motion to dismiss. (R. 32).

## II. Applicable Law

### A. Federal Civil Rule 12(b)(6) Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should not be granted "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (internal quotation marks

omitted). When reviewing a motion to dismiss, a court should "construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable

inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions[, as] [t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Instead, the sufficiency of a

complaint turns on its 'factual content,' … requiring the plaintiff to plead enough 'factual matter'

---

[4] The motion indicates that it is filed pursuant to Fed. R. Civ. P. 12(b)(1). (R. 9, PageID# 96).
This appears to be a drafting error, as the thrust of the brief in support is that the allegations
against them fail to state a claim—not that subject-matter jurisdiction is lacking. (R. 9-1). The
brief in support also sets forth the standard for 12(b)(6) motions. (R. 9-1, PageID# 102).

to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.") (internal citations omitted).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (*citing Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001)).

**B. Choice of Law**

As noted above, Plaintiffs' causes of action include claims for legal malpractice/negligence, negligent misrepresentations and/or omissions, aiding and abetting fraud under Oklahoma common law, and aiding and abetting a breach of fiduciary duty under the common law—all against Defendants O'Bannon and Vilardofsky. (R. 1). Other than the aiding and abetting fraud claim, none of these other causes of action specify which state's common law gave rise to the cause of action. *Id*. Plaintiffs contend that Defendants, by failing to address which state's law should apply, have failed to meet their burden under Rule 12(b)(6) and the motion to dismiss should be denied "for this reason alone." (R. 17, PageID# 153). Plaintiffs cite no law to support this proposition, and the court declines to effectively sanction Defendants for not raising the choice of law issue in their opening brief, especially where the Complaint failed to alert Defendants that the Plaintiff's common law claims were ostensibly based on the law of a state other than the forum state. Rather, Plaintiffs' Opposition to the Motion to Dismiss is the first instance in which the Plaintiffs allege that the Oklahoma common law, not Ohio's common law,

should govern this action. Because the choice of law issue impacts multiple counts, the court resolves the issue here.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Stone Surgical, LLC v. Stryker Corp.*, No. 16-1434, 2017 WL 2263010 at *3 (6th Cir. May 24, 2017) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Therefore, this court must apply Ohio's choice-of-law rules in determining what state's laws apply. The Supreme Court of Ohio has adopted the Restatement of the Law of Conflict. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 15 Ohio St. 3d 339, 341-342 (Ohio 1984); *accord Am. Interstate Ins. Co. v. G & H Serv. Ctr.*, 2007-Ohio-608, 861 N.E.2d 524, 112 Ohio St. 3d 521, 522 (Ohio 2007). At their heart, Plaintiffs' claims allege fraud and/or misrepresentation, and, therefore, Restatement (Second) of Conflict of Laws § 148 applies:

§ 148 Fraud and Misrepresentation

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148. The named Plaintiffs reside in Michigan and Idaho. The Complaint does not specify that the allegedly false representations were made and received in the same State, and utilizing the location of the Plaintiffs would be problematic given that the named Plaintiffs do not live in the same State and the potential for even greater diversity of putative class members. Therefore, the court applies § 148(2).

The Complaint frequently alleges conduct occurring in or originating from Ohio, including the following examples:

- "The Quantum Scheme was a fraudulent investment scheme perpetrated by Quantum and its principals, *out of Ohio* and California, between the late 1990s and 2015, that raised tens of millions of dollars from over 300 investors nationwide." (R. 1, ¶3) (emphasis added).

- Defendant Mysyk, who was previously dismissed from this action, was an Ohio resident and, "as former owner and principal of Quantum through and including 2012 … managed and oversaw Quantum's activities, *including the complained-of conduct that forms the basis of this case, from Hamden Township, Ohio.*" (R. 1, ¶7) (emphasis added).

- Defendant O'Bannon attended an audit of Quantum performed by the State of Ohio in 2008 and "assured Quantum and its principals that with respect to their process for certifying accredited investors they were 'doing things the right way.'" (R. 1, ¶106).

- "All of the Quantum Scheme securities were "offered for sale" in the state of Ohio pursuant to the Ohio Blue Sky Law because the issuers of such securities – the Quantum programs – were located in Ohio and/or the offers for such securities originated in Ohio, specifically from Quantum's headquarters in Ohio." (R. 1, ¶192)

6

- Venue is proper in [the Northern District of Ohio] because many of the illegal acts giving rise to this case occurred in this District, Quantum was headquartered in this District and did substantial business in the District, and Defendant Mysyk lives and has lived in this District at all relevant times. Many of the acts complained of herein were directed towards this District. (R. 1, ¶ 18).

Conversely, the Complaint is virtually devoid of any allegations concerning the State of Oklahoma. The Complaint does note that the law firm where Defendants O'Bannon and Vilardofsky are employed is located in Oklahoma City, and that the same Defendants reside in Oklahoma.[5] (R. 1, ¶¶12-14). It also mentions Oklahoma in Count Five, wherein it is alleged that the Defendants' conduct violated Oklahoma common law. (R. 1, PageID# 45). The ensuing paragraphs of Count Five do not specify where the complained of conduct occurred. (R. 1, ¶¶225-247).

A review of the factors under § 148(2) as a whole favors the application of Ohio law. Utilizing § 148(2)(a) or (b)—the place, or places, where the plaintiff acted in reliance upon the defendant's representations *or* the place where plaintiff's received the representations— would yield to the court applying separate state law to each named Plaintiff, an eventuality that is unworkable given the diversity of the named Plaintiffs and even more unworkable given the potential class action nature of the suit. However, Plaintiffs have alleged that the fraudulent investment scheme perpetrated by Quantum and its principals was administered "*out of Ohio* and California," and thus Ohio and California are the places where the defendants made the representations under § 148(2)(c). The factor contained in § 148(2)(d)—the domicil, residence,

---

[5] The only other mentions of Oklahoma in the Complaint pertain to background information concerning a separate and distinct lawsuit that Quantum Defendants herein initiated against an entity named Couch Oil. (R. 1, ¶¶109-112). That case, filed in Texas, alleged violations of both Oklahoma and Texas securities laws and has little to do with the choice of law issue in the case at bar. *Id.*

nationality, place of incorporation and place of business of the parties—arguably works in favor

of either Ohio or Oklahoma law depending on whether the Court looks at the Quantum

Defendants or Defendants O'Bannon and Vilardofsky. However, given the allegation that "the

issuers of the securities … were located *in Ohio* and/or the offers for such securities originated *in*

*Ohio*, specifically from Quantum's headquarters *in Ohio*" (R. 1, ¶ 192 emphasis added), the court

finds Ohio tort law should apply to all of Plaintiffs tort-based claims (*i.e.* Counts Three through

Seven).

     Plaintiff's assertion that Oklahoma had a more significant relationship to the lawsuit is not

well-taken. While Defendants O'Bannon and Vilardofsky may have drafted the offering

documents in Oklahoma where they reside and where their law offices are located, their

allegedly fraudulent and/or negligent conduct would not give rise to a cause of action until the

Quantum Defendants utilized the offering documents containing the alleged misrepresentations

and/or omissions in their security offerings and allegedly communicated those offerings to

potential investors such as the Plaintiffs. Based on the very allegations of the Complaint cited

above, most of this activity arose out of Ohio.

### III. Analysis

**A. Count One: Violation of California Corporations Code § 25504.1**

     The first cause of action alleges a violation of California Corporations Code § 25504.1

against Defendants O'Bannon and Vilardofsky based on the Quantum Defendants alleged

violation of California Corporations Code § 25504. Pursuant to California Corporations Code

section 25401:

> It is unlawful for any person to offer or sell a security in this state or buy or offer
> to buy a security in this state by means of any written or oral communication
> which includes an untrue statement of a material fact or omits to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp. Code § 25401.[6] In addition,

Any person who *materially assists* in any violation of Section … 25401, … with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

Cal. Corp. Code § 25504.1 (emphasis added).

**1. Privity Requirement**

Defendants O'Bannon and Vilardofsky acknowledge that Cal. Corp. Code § 25501 provides civil liability for violations of section 25401, but argue that it imposes a strict privity requirement between the seller and the buyer of the security. (R. 9-1. PageID# 102-104). In pertinent part, Cal. Corp. Code § 25501 states that "[a]ny person who violates Section 25401 shall be liable *to the person who purchases a security from him or sells a security to him*, who may sue either for rescission or for damages …." Plaintiffs' brief in opposition argues that they have adequately pled privity between themselves and the Quantum Defendants, and that privity is not required between them and Defendants O'Bannon and Vilardofsky, in order to pursue a secondary liability theory under section 25504.1. (R. 17, PageID# 145-147).

There appears to be little, if any, disagreement between the parties as to the privity requirements under California law. Defendants O'Bannon and Vilardofsky concede that Plaintiffs do not need to establish independent privity against them specifically, but do point out that in order for secondary liability to attach to them, Plaintiff must establish privity with the

---

[6] This version of the statute, cited by Defendants (R. 9-1, PageID# 103), appears to have been in effect until December 31, 2013, and would cover the bulk of the time frame at issue in the Complaint (2006 to 2015). Plaintiffs' opposition brief does not utilize a different version of the statute. (R. 17). While there exist four subsequent versions of the statute, no party alleges that the different versions of the statute have a material impact on this matter.

party on whom their secondary liability is based (*i.e.* the Quantum Defendants). (R. 9-1, PageID# 103). *See, e.g., Siegal v. Gamble*, No. 13cv3570, 2016 WL 3648503 at *5 (N.D. Cal. July 7, 2016) ("As long as plaintiffs show they were in privity with the primary violator, as section 25401 requires, they need not show that they were in privity with the secondary violators under sections 25504 and 25504.1.") In their brief in opposition Plaintiffs concede that:

> [T]o adequately plead Defendants' [O'Bannon and Vilardofsky's] secondary liability for their assistance of the Quantum Scheme perpetrators' sales of securities to Plaintiffs and Class members, Plaintiffs were required to plead that they had a direct buyer-and-seller relationship with the Quantum Scheme perpetrators, *see id*. at 878. In other words, Plaintiffs were required to plead that the Quantum Scheme perpetrators themselves - and not some subsequent buyers-and-resellers of the Quantum Scheme securities - sold such securities to, and raised money from, Plaintiffs.

(R. 17, PageID# 146). Plaintiffs maintains that their Complaint has sufficiently alleged that the Quantum Defendants, and not a subsequent reseller, raised proceeds directly through the sale of securities. *Id*. Conversely, in their reply brief, Defendants O'Bannon and Vilardofsky assert that no portion of the Complaint has alleged that the Quantum Defendants "were the 'actual' or 'literal' sellers of the offering purchased by the Named Plaintiffs." (R. 20, PageID# 180-181).

The court has reviewed the allegations in the Complaint, with particular emphasis on the portions of the Complaint cited by Plaintiffs, which they believe allege a direct buyer-seller relationship. (R. 17, PageID# 146-157; R. 1 at ¶¶19, 21, 23, 86, 183-184, 187). The Complaint does not specifically allege that Quantum Defendants directly sold the securities to the Plaintiffs or other investors. The closest allegation that there was a direct buyer-seller relationship between the named Plaintiffs and the Quantum Defendants is a statement from Count One: "the Quantum Scheme securities were offered and sold to Plaintiffs and the members of the Class through numerous untrue statements of material facts as well as omissions of material facts in the

Quantum programs' offering documents …." (R. 1 at ¶183). With respect to unnamed potential class members, Plaintiffs have alleged that the Quantum Defendants successfully raised money by cold-calling investors, and that "Quantum regularly 'cold-called' investors using lists purchased from third parties[.]" (R. 1, ¶¶ 21, 107).

The Complaint's allegations, however, fail to allege that it was actually the Quantum Defendants that sold the securities to Plaintiffs. Conspicuously absent from the entire Complaint is any identification that the Quantum Defendants were the actual seller of the securities. Rather, the allegations vaguely state that Plaintiffs and members of the class purchased Quantum securities in reliance on untrue statements and/or omissions in the offering documents created by the Defendants, but without offering any allegation as to the identity of the seller.

Relevant court decisions have dismissed complaints that failed to adequately plead privity. For example, a district court applying California law granted a 12(b)(6) motion to dismiss a § 25504.1 claim because "the complaint does not contain the necessary allegation that the defendants materially assisted persons who were in privity with stock purchasers." *Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F. Supp. 381 (S.D. Calif. 1994) ("Nowhere does the complaint state that the insureds were the persons who directly sold the securities to the investors."). Courts sitting in other jurisdictions have reached the same decision. *See Vallejo Sanitation & Flood Control Dist. v. Fuld (In re Lehman Bros. Secs. & ERISA Litig.)*, 903 F. Supp. 2d 152, 196-197 (S.D.N.Y. Oct. 15, 2012) (dismissing § 25504.1 claim because the complaint did not allege "from whom or in what manner plaintiffs purchased these securities" and did "not adequately allege that plaintiffs were in privity with any 'seller' of the offerings at issue and so it does not adequately allege a primary violation of the relevant statutes"); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 2:08MD1919, 2010 WL 1734848 at

11

*8 (W.D. Wash. Apr. 28, 2010) (dismissing § 25504.1 claim where plaintiffs failed to allege "who they purchased the securities from or whether the seller is one of the Defendants" and at oral arguments "conceded that they likely purchased them from a third-party."); *cf. Wallack v. Idexx Labs., Inc.*, No. 11cv2996, 2013 WL 1562523 at *11 (S.D. Cal. Apr. 11, 2013) ("Plaintiff's failure to adequately allege the requisite underlying section 25401 claim is fatal to the section 25504.1 claim of material assistance against all Defendants").

In accordance with the above decisions, the Complaint herein omits the necessary allegation that Plaintiffs were in privity with the Quantum Defendants, whom Defendants O'Bannon and Vilardofsky allegedly materially assisted. Therefore, the court does not construe the Complaint as alleging that any of the named Plaintiffs were in a direct buyer-seller relationship with the Quantum Defendants. Finally, if Plaintiffs failure to allege circumstances establishing privity with the Quantum Defendants was merely an oversight or drafting error, it bears noting that Plaintiffs have not sought to amend the Complaint to plead unambiguously that one or more of the named Plaintiffs purchased the securities in question directly from the Quantum Defendants.

To the extent Plaintiffs would concede that the named Plaintiffs may not have had privity with the Quantum Defendants, but that some individual or entity must have purchased the securities directly from the Quantum Defendants and those persons or entities would qualify as members of the putative class, then the named Plaintiffs would lack standing. In order to have standing to sue, a plaintiff must have (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) redressability, and "[t]o establish an 'injury in fact,' the plaintiffs must be 'among the injured.'" *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) ("the plaintiff must have a 'personal stake' in the dispute, alleging an injury 'particularized

as to him'") (citations omitted). Furthermore, "[a] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989) (citations omitted); *see also In re W.T. Grant Co.*, 24 B.R. 421, 425 (S.D.N.Y. 1982) ("Stated another way, the plaintiff must have standing to represent the class.'") (*citing* 3B Moore's Federal Practice P 23.04(2) p. 23-120-122 (2d ed. 1982)).

For the foregoing reasons, it is recommended that Count One be DISMISSED.

**2. Sale of Securities in California**

Although the court recommends dismissing Count One based on a lack of privity, Defendants O'Bannon and Vilardofsky further argue that Plaintiffs have not alleged that any of the investors were located in California, that a single investor purchased a security in California, or that the Quantum Defendants offered or sold a single security in California. (R. 9-1, PageID# 104-105). Therefore, these defendants argue, Plaintiffs cannot maintain a cause of action for securities fraud under California law. *Id*. Though the issue may be moot, the court will, nevertheless, address Defendants' argument as an alternate basis for dismissal.

Plaintiffs argue, in opposition, that the California's Blue Sky Law does not require that the securities in question must have been offered or sold to investors in California. (R. 17, PageID# 148-149). Contrary to Defendants' position, Plaintiffs contend that it is sufficient if the security offerings originated from California. *Id*. Cal. Corp. Code § 25401 makes it "unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state" by means of a material misrepresentation or omission. By statute, an offer or sale of security and an offer to sell or to buy a security are defined as follows:

(a) An offer or sale of a security is made in this state when an offer to sell is made

> in this state, or an offer to buy is accepted in this state, or (if both the seller and
> the purchaser are domiciled in this state) the security is delivered to the purchaser
> in this state. An offer to buy or a purchase of a security is made in this state when
> an offer to buy is made in this state, or an offer to sell is accepted in this state, or
> (if both the seller and the purchaser are domiciled in this state) the security is
> delivered to the purchaser in this state.

Cal. Corp. Code § 25008.[7]

"As the offering materials in this action apparently emanated from [the defendant's] California headquarters, and the buyers' acceptances were apparently directed at a California entity, it is appropriate to certify a plaintiff class for this claim." *In re Victor Techs. Sec. Litig.*, 102 F.R.D. 53, 60 (N.D. Cal. 1984), *aff'd*, 792 F.2d 862 (9th Cir. 1986); *see also Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 548 (Cal. 1999) ("An offer to sell is made 'in this state' if the offer originates from California…. Thus, a sale occurs 'in this state' even if the purchaser is in, and communicates acceptance of the offer to sell from, New York.")

The Complaint alleges that "[a]ll of the Quantum Scheme securities were 'offered for sale' in the state of California pursuant to California Corporations Code § 25008 because the issuers of such securities – the Quantum programs - were located in California and/or the offers for such securities originated in California, specifically from Quantum's headquarters in Irvine, California." (R. 1, ¶181).

The Complaint sufficiently alleges that an offer or sale of a security originated from California, specifically the Quantum Defendants' offices in Irvine, California. Therefore, the court does *not* recommend dismissing Count One on this basis.

---

[7] The case cited by Defendants, *MTC Elec. Techs. Co. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995), merely quotes Cal. Corp. Code § 25401 in a footnote and does not discuss the definition of an offer or sale of a security made in California as set forth in Cal. Corp. Code § 25008. Therefore, the case is of little utility.

### 3. Statute of Limitations

Finally, Defendants O'Bannon and Vilardofsky also argue that Count One should be dismissed with respect to claims based on securities offerings made prior to July 20, 2011, because they are time-barred due to a five-year statute of limitations. (R. 9-1, PageID# 105).

> (b) For proceedings commencing on or after January 1, 2005, no action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of five years after the *act or transaction constituting the violation* or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, *whichever shall first expire*.

Cal. Corp. Code § 25506 (emphasis added).

Defendants O'Bannon and Vilardofsky's brief in support fails to identify any case law interpreting § 25506. (R. 9-1. PageID#105). Generally, it is their position that any alleged violation would have accrued on the date the various offerings were made. *Id*. Plaintiffs concede that "the five-year bar applies to *transactions* prior to July 20, 2011," but denied that California law bars actions five years after the date of "*entire securities offering*s." (R. 17, PageID# 150) (emphasis in original).

Therefore, the dispositive issue is whether the phrase "five years after the act or transaction constituting the violation" from § 25506 refers to the date of the sale of the security (as advocated by Plaintiffs) or the date of the security offering when the alleged misrepresentation or omission was made (as alleged by Defendants). The answer is not clear from the plain language of the statute. Neither Plaintiffs nor Defendants cite any case law that explains the distinction between (1) an act that constitutes a violation, or (2) a transaction that constitutes a violation. Plaintiffs rely on *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982), where the Ninth Circuit observed that "[n]othing suggests to us that the interpretation of this statute [§ 25506]

should differ from that of section 13 of the 1933 Act."[8] (R. 17, PageID# 150-151). Plaintiffs read the *Seaboard* decision too broadly. The issue before the *Seaboard* court was merely whether the statute of limitations constituted an absolute bar, and the decision offers no insight into the meaning of "act or transaction" under § 25506. *See* 677 F.2d at 1308 ("Section 25506 contains a statute of limitations similar to section 13 of the 1933 Act…. The plain language indicates that the four-year bar is absolute.")

Nevertheless, it is Defendants' burden as the moving party to show that California law would bar the actions alleged in the Complaint. They have failed to do so, with respect to this alternative theory. Furthermore, there is some authority that implicitly suggests the date of the transaction rather than the date of the security offering is the trigger. *See, e.g., Clayton v. Landsing Pac. Fund, Inc.*, No. C 01-03110, 2002 WL 1058247 at *4 (N.D. Cal. May 9, 2002) (dismissing the California Blue Sky action because the complaint did not allege any purchases of securities in the four-year period before the suit was initiated), *aff'd*, 56 F. App'x 379 (9th Cir. 2003); *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561, 2005 WL 3590984 at *26 (N.D. Cal. Dec. 30, 2005) (finding plaintiffs' California Blue Sky claim was not time-barred because the cause of action was instituted within four years of the date the plaintiffs entered into a subscription agreement to purchase funds). While these cases do not squarely address the issue, they do focus on the date of the securities transactions.

---

[8] "In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale." 15 U.S.C. § 77m. Therefore, Plaintiffs argue that it is also the date of the sale that triggers § 25506's five-year statute of limitations. (R. 17, PageID# 150-151).

Therefore, it is recommended the motion to partially dismiss Count One on statute of limitations grounds be GRANTED in part and DENIED in part. Specifically, because Plaintiffs concede the five-year statute of limitations bars *transactions* prior to July 20, 2011 (R. 17, PageID# 150), it is recommended that any claims in Count One purporting to allege a cause of action based on sales of securities that pre-date July 20, 2011 be DISMISSED.[9]

**B. Count Two: Violations of Ohio Blue Sky Law, O.R.C. § 1707.43**

Defendants O'Bannon and Vilardofsky assert that Count Two should be dismissed because, as attorneys, they are immune from liability under Ohio's Blue Sky Law for acts constituting the provision of legal services. (R. 9-1, PageID# 105-106). Defendants O'Bannon and Vilardofsky, in support of their argument, rely on the following statutory provision:

> For purposes of this section, the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of sections 1707.01 to 1707.45 of the Revised Code:
>
> (A) Any attorney, accountant, or engineer whose performance is incidental to the practice of the person's profession;

O.R.C. § 1707.431.

Plaintiffs counter that Defendants O'Bannon and Vilardofsky are not immune under the statute because they knowingly assisted the Quantum Defendants in perpetrating a fraud. (R. 17, PageID# 151-153). Plaintiffs further aver that fraud is not incidental to the practice of law, because Ohio Rule of Professional Conduct 1.2(d)(1) states that "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent." OH

---

[9]  Again, given the court's recommendation that Count One be dismissed in its entirety for lack of privity, this recommendation with respect to transactions pre-dating July 20, 2011, may be moot. However, the court deemed it prudent to address Defendants' third argument in favor of partial dismissal.

ST RPC Rule 1.2. Plaintiffs cite a decision from bankruptcy court indicating that under O.R.C. § 1707.431(A), "only those attorneys whose performance is incidental to the practice of their profession are exempt," and finding that Plaintiff's allegations that the defendant's acts or omissions were not incidental to the performance of legal professional services was sufficient to survive a motion to dismiss. *Zaremba v. Pheasant (In re Cont'l Capital Inv. Servs., Inc.)*, No. 03-3370, 2006 WL 6179374 (N.D. Ohio Jun. 12, 2006).

In their reply, Defendants O'Bannon and Vilardofsky argue that Plaintiffs are attempting to create a private cause of action for an alleged violation of Ohio's disciplinary rules through Ohio's Blue Sky law. However, "[i]n order to be liable under § 1707.43, an attorney for a company must participate in the sale in some manner other than providing legal services to the company." *In re Nat'l Century*, 2008 WL 1995216 at *9 (*citing Leeth v. Decorator's Mfg., Inc.*, 67 Ohio App.2d 29, 425 N.E.2d 920 (Ohio Ct. App. 1979));

With respect to Defendants O'Bannon and Vilardofsky, Plaintiffs' Complaint generally alleges that they "played a key role in assisting the Quantum scheme, because they structured each of Quantum's securities offerings at issue, advised Quantum and its principals about how to promote the Quantum Scheme, and prepared the offering documents for the Quantum offerings." (R. 1, ¶6). With respect to several different offerings of the Quantum Defendants, the Complaint alleges that Defendants O'Bannon and Vilardofsky "helped structure" the offering, "advised the Quantum Defendants on how to organize and promote such offering," and drafted the offering documents. (R. 1, ¶¶28, 33, 37, 42, 51, 57, 62, 67, 73, 78, 103-106). Plaintiffs allege that Defendants O'Bannon and Vilardofsky: (1) failed to disclose the existence of several lawsuits in the offering documents it drafted on behalf of the Quantum Defendants (R. 1, ¶¶ 117-118, 130-131, 152-161); (2) failed to disclose the diversion of investor funds to questionable investments

and an unjustified amount of overhead in the offering documents it drafted on behalf of the Quantum Defendants (R. 1, ¶¶133-142); and (3) failed to disclose allegedly fraudulent activities by Defendant Schumacher in the offering documents it drafted on behalf of the Quantum Defendants (R. 1, ¶¶143-151).

The court finds *McCartney v. Universal Elec. Power Corp.*, 2005-Ohio-4366 at ¶10, 2005 WL 20205592005 (Ohio Ct. App. Aug. 24, 2005) instructive. Therein, the court found an attorney was immune under § 1707.431 and, despite construing the allegations in the plaintiff's favor, concluded that he was acting as legal counsel incidental to his practice. Notably, the court deemed the following conduct as all incidental to the practice of law: preparation of a securities note; counseling his client—the offeror of the securities; and speaking with the plaintiff on behalf of his client. *Id.* "If [the attorney] was simply performing the normal duties of an attorney for the corporation, then … liability should not attach as a result of those activities. The difficulty lies in separating [the attorney's] activities into those covered by the 'normal duties' exception, and those which are outside of an attorney's normal duties." *In re Bell & Beckwith*, 89 B.R. 632, 647 (N.D. Ohio 1988). Similarly in the case at bar, Defendants O'Bannon and Vilardofsky are alleged to have counseled their clients and drafted securities documentation on their behalf— normal duties for an attorney to perform on behalf of their client. Plaintiffs' allegations do *not* allege actions performed by Defendants O'Bannon and Vilardofsky that fall outside duties incidental to the practice of law. Rather, even construing the allegations in the light most favorable to Plaintiffs, the Complaint instead alleges that Defendants O'Bannon and Vilardofsky performed these professional duties negligently or even fraudulently. In other words, Plaintiffs' allegations essentially challenge the quality or manner in which Defendants performed their professional duties as attorneys. The Complaint does not identify actions that clearly fall outside

19

the scope of duties normally performed by counsel.[10]

Therefore, it is recommended that Count Two be DISMISSED.

**C. Count Three: Legal Malpractice/Negligence**

Defendants O'Bannon and Vilardofsky argue that Plaintiffs' legal malpractice claim contained in Count Three should be dismissed because they did not have an attorney-client relationship with the named Plaintiffs or any of the investors. (R. 9-1, PageID# 106-108). Defendants O'Bannon and Vilardofsky further assert that Plaintiffs' malpractice claim is time-barred. *Id.*

As discussed *supra*, the court has determined that Ohio tort law should apply to all of Plaintiffs' tort claims.[11] Attorneys are immune from liability to third persons arising from their performance as attorneys, unless the third persons are in privity with the client or unless the attorney acts maliciously. *See, e.g., Scholler v. Scholler*, 10 Ohio St. 3d 98, 103, 462 N.E. 2d 158 (Ohio 1984); *accord Shoemaker v. Gindlesberger*, 2008-Ohio-2012, 887 N.E.2d 1167, 118 Ohio St. 3d 226, 229-230 (Ohio 2008) ("The strict privity rule ensures that attorneys may represent their clients without the threat of suit from third parties … an attorney's preoccupation or concern with potential negligence claims by third parties might diminish the quality of legal

---

[10] To the extent Plaintiffs are arguing that a common law exception should apply based on the maxim that "nobody may be heard [in court] alleging its own misconduct [in his defense]" (R. 17, PageID# 152-153), the court notes that Plaintiffs are alleging a statutory cause of action that contains statutory immunities. It would be similarly unjust to allow Plaintiffs the benefit of a statutory cause of action, while ignoring pertinent provisions in the same statute that limit the scope of such a cause of action.

[11] "Legal malpractice is defined as professional misconduct involving negligence or breach of contract." *Hicks v. Garrett*, 2012-Ohio-3560 at ¶112 (Ohio Ct. App., Aug. 6, 2012). Plaintiffs have not alleged a contract with Defendants O'Bannon and Vilardofsky and, therefore, their malpractice claim sounds in tort.

services provided to the client if the attorney were to weigh the client's interests against the possibility of third-party lawsuits.") (citations omitted).

The Complaint has not alleged that Defendants O'Bannon and Vilardofsky acted with malice, nor does it allege facts from which malice could reasonably be inferred. Therefore, Plaintiffs would be required to allege privity. The Complaint alleges "Plaintiffs and Class members are third-party beneficiaries of the attorney-client relationship between the Phillips Murrah Defendants and Quantum." (R. 1, ¶208). This allegation, however, is not factual but rather contains a legal conclusion, which the court is not obligated to accept under *Iqbal*. Defendant's reply brief cites a recent Ohio decision discussing the "very narrow privity" exception, *Omega Riggers & Erectors, Inc. v. Koverman*, 2016-Ohio-2961, 65 N.E.3d 210, 220, *appeal not allowed*, 2016-Ohio-7455, ¶ 24, 147 Ohio St. 3d 1412, 62 N.E.3d 185 (Ohio 2016). The court finds the *Koverman* decision and its discussion of the application of the privity exception instructive:

> In *Scholler*, a mother had sued her former attorney, on behalf of herself and her minor son, for the attorney's alleged negligent failure to have obtained child support for the son in her divorce proceedings. The son was not directly represented by mother's attorney so the question arose whether privity between mother and child, a commonality of interest in getting the child support, was a substitute for an attorney-client relationship. *Scholler* cited the general privity principle, but the finding of no privity in *Scholler* demonstrates how very narrow the privity exception is interpreted. *Scholler* held that "an attorney who represents a spouse in the negotiation of a separation agreement does not simultaneously, automatically represent the interests of a minor child of the marriage." *Id* at 104, 462 N.E.2d 158. In other words, there is no privity between mother and child.[12]

---

[12]  The *Scholler* court explained that "it cannot be said that the interests of the wife in negotiating a separation agreement to achieve a fair division of marital assets are concurrent with the interests of the child to receive support…. [because] [i]t is not the wife's responsibility alone to see that a proper amount of child support is provided for in the separation agreement." 462 N.E.2d 158, 164 (finding the ultimate responsibility for ensuring that a child receives adequate child support lies with the court).

{¶ 25} The next often cited case in the "privity" sequence is *Simon v. Zipperstein*, 32 Ohio St.3d 74, 77, 512 N.E.2d 636 (1987). There the attorney had drafted both an antenuptial agreement and a will for a client. The documents could be construed as inconsistent. After the client's death, one of the potential beneficiaries under the will brought an action against the attorney for malpractice because the attorney did not clearly prevent the surviving spouse from taking under both the antenuptial agreement and the will. *** the Ohio Supreme Court *** concluded that a potential beneficiary of a will was not in privity with the testator for purposes of suing the attorney who prepared the will. It also cautioned this court about disregarding the holding of *Scholler* based upon non-distinct "public policy" grounds. Simon therefore also reflects how very narrow the privity exception is when there is no attorney-client relationship in a legal malpractice action.

{¶ 26} Next is *Elam v. Hyatt Legal Services*, 44 Ohio St.3d 175, 541 N.E.2d 616 (1989). There a decedent's will devised a life estate in her real property to her husband with the remainder to her nephews and niece. The attorney for the husband, now executor, unbeknownst to the remaindermen, caused the filing of a certificate of transfer for the property to the husband in fee simple. *** the Ohio Supreme Court *** [held] that "[a] beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance." *Id.* at 177, 541 N.E.2d 616.

\*\*\*

{¶ 27} Last in the line of development of the privity exception is *Arpadi v. First MSP Corp.*, 68 Ohio St.3d 453, 454, 628 N.E.2d 1335 (1994). There a limited partnership was acquiring an apartment building with the intention of converting it into condominiums. *** The Ohio Supreme Court framed the question in the case as follows: "The present action involves whether the duty owed by an attorney to exercise due care in the provision of legal services to a partnership extends to the limited partners as well." *Id.* at 456, 628 N.E.2d 1335. After reviewing *Scholler*, *Simon*, and *Elam*, the Ohio Supreme Court held that the duty the attorneys owed to the partnership extended to the individual partners thereof. In so doing, however, the court distinguished a partnership from a corporation, noting that "a partnership is an aggregate of individuals and does not constitute a separate legal entity." *Id.* at 457, 628 N.E.2d 1335.

{¶ 28} The foregoing analysis demonstrates that the privity substitute for lack of an attorney-client relationship has been extended only to undeniably-vested beneficiaries of an estate and to the limited partners of a partnership. The exception has not been extended to minor children affected by representation of a parent in a divorce or to potential beneficiaries of a will. Significantly, there is no

> Ohio case that has extended the privity concept to allow a shareholder, who does not have a direct attorney-client relationship with corporate counsel, to sue a corporation's attorney for malpractice. We do not believe we should create one.

*Koverman*, 65 N.E.3d 210 at ¶¶24-28.

Based upon the above case law where privity was deemed not to exist, the court finds that Plaintiffs have not sufficiently pled privity. Plaintiffs are neither akin to the undeniably-vested beneficiaries of an estate nor to the limited partners of a partnership. Rather, Plaintiffs allege they invested in securities offered by the Quantum Defendants. But Plaintiffs have not pled a viable cause of action for legal malpractice against attorneys, with whom they maintained no direct attorney-client relationship. In addition, Plaintiffs have not alleged facts averring they are so situated that Ohio law would recognize them to be in privity with Defendants O'Bannon and Vilardofsky's actual clients, Quantum Defendants. The Complaint lacks sufficient factual averments to satisfy the very narrow privity exception recognized under Ohio law.

Therefore, the court recommends that Count Three alleging legal malpractice be DISMISSED for failing to state a claim upon which relief could be granted.[13]

**D. Count Four: Negligent Misrepresentations and/or Omissions**

Defendants O'Bannon and Vilardofsky assert that Count Four should be dismissed because Ohio law does not recognize a third-party claim for negligent misrepresentation against attorneys for acts performed on behalf of their clients, with the client's knowledge, and in good faith. (R. 9-1, PageID# 108-110).

As noted immediately above, under Ohio law, attorneys are immune from liability to third

---

[13] Because the court finds that Plaintiffs have failed to state a claim for legal malpractice against Defendants O'Bannon and Vilardofsky, the issue of whether the statute of limitations has run is moot.

persons arising from their performance as attorneys unless the third persons are in privity with the client or unless the attorney acts maliciously. *See, e.g., Scholler*, 10 Ohio St. 3d at 103. As discussed above, Plaintiffs have not alleged facts sufficient to even call into question whether narrow privity exception could be applicable. Furthermore, Defendant's motion identifies a case with similar facts. (R-1, PageID# 109). In *In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig.*, No. 2:03-MD-1565, 2008 WL 1995216 (S.D. Ohio May 5, 2008), the plaintiff alleged negligent misrepresentation against the outside legal counsel of a company whose preferred stock it had purchased, specifically alleging that a letter from outside counsel, Purcell & Scott, upon which the plaintiff relied contained false statements. The District Court, applying Ohio law, dismissed the negligent misrepresentation claim finding as follows:

> Purcell & Scott is entitled to attorney immunity. "Under Ohio law, attorneys enjoy immunity from liability to third persons arising from acts performed in good faith on behalf of, and with the knowledge of, their clients ." *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 700 (6th Cir. 1996) (*citing Scholler v. Scholler*, 10 Ohio St.3d 98, 103, 462 N.E.2d 158, 163 (Ohio 1984)). An exception to attorney immunity is when the attorney or firm acts maliciously, *Scholler*, 10 Ohio St.3d at 103, 462 N.E.2d at 163, but by definition, negligent misrepresentation is not a claim that alleges the existence of malice. *See Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (Ohio 1989) (negligent misrepresentation is a failure to exercise reasonable care or competence in obtaining or communicating the information). Therefore, Pharos's claim for negligent misrepresentation is dismissed. *See Brady ex rel. Brady v. Hickman & Lowder, Co., L.P.A.*, No. 82461, 2003 WL 22413491, at *3 (Ohio Ct.App. Oct. 23, 2003) (dismissing, on the basis of attorney immunity, third party claim for negligent representation against attorney); *see also Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419 (Ohio 1991) (in context of punitive damages, mere negligence does not constitute malice).

*In re Nat'l Century Fin. Enterprises, Inc. Inv. Litig.*, 2008 WL 1995216 at *7 (S.D. Ohio May 5, 2008).

Here too, Defendants O'Bannon and Vilardofsky are entitled to attorney immunity, and Count Four fails to state a claim for essentially the same reasons in the court's discussion of

24

Count Three. Therefore, it is recommended that Count Four be DISMISSED.

### E. Counts Five and Seven: Aiding and Abetting Fraud and Breach of Fiduciary Duty[14]

The court addresses counts five and seven together, because both counts allege aiding and abetting tortious conduct. Defendants O'Bannon and Vilardofsky argue that Counts Five and Seven should be dismissed because they fail to state a claim under Ohio law.[15]

Defendants are correct. In *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.*, 2012-Ohio-3828, 132 Ohio St. 3d 516, 974 N.E.2d 1194 (Ohio 2012), the U.S. District Court for the Northern District of Ohio certified a question of state law to the Supreme Court of Ohio asking: "Under the applicable circumstances, does Ohio recognize a cause of action for tortious acts in concert under the Restatement (2d) of Torts, § 876?" After hearing oral arguments, the Ohio Supreme Court answered the certified question in the negative, stating that it "has never recognized a claim under 4 Restatement 2d of Torts, Section 876 (1979), and we decline to do so

---

[14] As discussed above, the court has determined that Ohio law applies to all of Plaintiffs' tort claims, which would include Count Five wherein Plaintiffs alleged aiding and abetting fraud under Oklahoma common law. The court treats this cause of action as alleging a cause of action under Ohio law, as Plaintiffs are not free to pick-and-choose which state's laws should apply.

[15] Defendants also argue that Oklahoma law does not recognize a cause of action for aiding and abetting fraud and, alternatively, that such a claim is time-barred. (R. 9-1, PageID# 111-113). The court need not decide the matter, as Ohio law applies. Nevertheless, there are a line of decisions supporting Defendants' argument. *See, e.g., Eastwood v. Nat'l Bank of Commerce, Altus, Okl.*, 673 F. Supp. 1068, 1081 (W.D. Okla. 1987) ("It does not appear that Oklahoma recognizes a cause of action for aiding and abetting common law fraud but that it may recognize a civil cause of action for conspiracy to defraud."); *accord Transportation All. Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-16-GKF-PJC, 2011 WL 221863 at *5 (N.D. Okla. Jan. 21, 2011) ("It does not appear that Oklahoma recognizes a cause of action for acquiescing in, or aiding and abetting, common law fraud."); *Bradshaw v. SLM Corp.*, No. C 12-6376 JSW, 2013 WL 12166318 at *3 (N.D. Cal. Sept. 24, 2013) ("under Oklahoma law, there is no cause of action for aiding and abetting fraud"), *aff'd*, 652 Fed. App'x 593 (9th Cir. 2016).

under the circumstances of this case."[16] *Id.*

Based on the *DeVries* holding, Ohio courts have consistently concluded that "Ohio does not recognize a cause of action for aiding and abetting a tortious act." *Wells Fargo v. Smith*, 2013-Ohio-855 at ¶36, 2013 WL 938069 (Ohio Ct. App. Mar. 11, 2013) (finding no error in the trial court's grant of summary judgment on aiding and abetting fraud claim, because such a cause of action is unrecognized); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 905 F. Supp. 2d 814, 835 (S.D. Ohio 2012) ("The Ohio Supreme Court just recently settled the issue by holding that Ohio does not recognize a cause of action" for aiding and abetting tortious conduct, specifically for aiding and abetting fraud), *aff'd sub nom. Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 Fed. App'x 522 (6th Cir. 2013); *Sacksteder v. Senney*, 2012-Ohio-4452 at ¶73, 2012 WL 4480695 (Ohio Ct. App. Sept. 28, 2012) (affirming the trial court's dismissal of a claim alleging participation in a breach of fiduciary duty on the grounds that Ohio courts have not recognized such a cause of action); *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 381, 738 N.E.2d 842, 853 (Ohio Ct. App. 2000) ("trial court was correct in concluding that

---

[16] Section 876, Persons Acting in Concert, provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).

Ohio does not recognize a claim for aiding and abetting common-law fraud"). "Federal Courts in Ohio, including the Sixth Circuit, have similarly determined that aiding and abetting claims like plaintiffs' are not viable in light of the *DeVries* holding. *Grubbs v. Sheakley Grp., Inc.*, No. 1:13-CV-246, 2014 WL 202041, at *7 (S.D. Ohio Jan. 17, 2014), *report and recommendation adopted*, 2014 WL 934535 (S.D. Ohio Mar. 10, 2014) (*citing Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 929 (6th Cir. 2013); *Parlin Fund LLC v. Citibank N.A.*, No. 1:13cv111, 2013 WL 3934997 at *8 (S.D. Ohio July 30, 2013)).

Based on the clear import of these decisions, Plaintiff's aiding and abetting tortious conduct claims, as contained in Counts Five and Seven, fail to state viable claims under Ohio law upon which relief may be granted. Therefore, it is recommended that Counts Five and Seven be DISMISSED.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Motion to Dismiss (R. 9) be GRANTED with respect to Counts One, Two, Three, Four, Five and Seven, but DENIED with respect to the movants' alternative theories for dismissing Count One, as set forth above. In addition, Count Six of the Complaint, which alleges a breach of fiduciary duty under the common law against Defendants Quantum Energy, LLC, Quaneco, LLC, and Schumacher remains, as these Defendants have not filed a motion for dismissal.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: July 14, 2017

27

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).